JERRY A. KASALA, CLAIRE KASALA, ELDO COLLIER, AMBER COLLIER, SHERMAN CARLSON AND GRACE CARLSON, Plaintiffs and Respondents, *v.* KALISPELL PEE WEE BASEBALL LEAGUE and the City of Kalispell, a Municipal Corporation, Defendants and Appellants.

No. 11314.
Decided April 3, 1968.
439 P.2d 65.

Korn, Warden & Walterskirchen, William C. Walterskirchen (argued), Marshall Murray (argued), Kalispell, for appellants.

William Dee Morris (argued), Columbia Falls, for respondents.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

This appeal results from a finding by the trial court, sitting without a jury, that the Pee Wee Baseball League as conducted in Kalispell was a nuisance and from an injunction that not only would prevent the use of a playground for baseball, but also, the ordering of the removal of all light poles, backstops and other baseball paraphernalia from the playground. Pending this appeal, appellants obtained an order from this court suspending the lower court's injunction.

In 1936, the City of Kalispell purchased a vacant city block located in the residential section of the city, referred to as "Thompson Field." Throughout the ensuing years, the field

has been used for football, softball, and for Pee Wee baseball since 1952.

The Pee Wee Baseball League in the city is an unincorporated association of parents imbued with the idea that the all-American game of baseball is important to a growing boy. Lights were installed at Thompson Field in 1963 so that the Pee Wee League could play ball into the summer evenings up until 10:00 p. m. According to the testimony this was necessary because the fathers who served as team coaches did not get off work early enough to have their teams play daylight games. During the 1964 season over 400 boys between 8 and 12 years of age participated in the program and used the field, during a seven-week period in June and July, and in which months, between 23 and 30 evening baseball games were played.

The respondents Collier, whose home was located in the northeast corner of the block just west of the field, purchased their property in 1952; the respondents Carlson, whose property adjoins the Colliers, purchased their property in 1950; and the respondents Kasala, whose property was located in the block northwest of the field purchased their property in June 1964.

Two of the respondents, the Colliers and the Carlsons testified that they did not object to the use of the field for baseball, but did object to the lights and the noise and increased traffic at the time of the games. The respondent Kasalas testified in support of their request for an injunction that:

(1) The bright lights bothered them at night;

(2) Noise from the attending crowd bothered them;

(3) That heavy traffic created a hazardous condition;

(4) That when the field was dragged the dust bothered them;

(5) That some children used foul language;

(6) Balls were hit into their yard and their lawns and flowers were damaged; and

(7)  Games were played after 10:00 p. m.

Needless to say, at the time the matters were heard, public interest was in evidence. The appellants had some 27 witnesses, 24 of whom lived either across from the field or within one-half block of it. Some 16 of these witnesses' testimony was stipulated to at the time of the hearing, but without question the majority of the property owners, whose property surrounded the field disagreed with the respondents and testified that there was little or no interference with the comfortable use of their property. City officials testified that they were familiar with the area, had received requests and complaints from the respondents and had tried to rectify their complaints. The chief of police testified that special measures were taken on the nights of ball games to control traffic; testimony was given indicating that the public officials, when informed that debris from the field blew onto respondents' lawns, made special efforts thereafter to see that the area was policed, and in addition upon learning of respondents' objections to the lights, efforts were made to have the games end before 10:00 p. m., so that the lights could be turned off.

In spite of all this testimony the court found:

(a)  The property of the plaintiffs (respondents) and each of them is continually trespassed upon;

(b)  The plaintiffs (respondents) and each of them, including their friends, families and guests live in fear of injury to their persons and property from flying balls;

(c)  That by reason of the playing of baseball games, the quiet and enjoyment of the plaintiffs' (respondents') property has been seriously interfered with by reason of the excessive noise caused by the attending public and the participants; that the attending public, on many occasions disorderly, congregates in the area; that obscene language is used publicly;

(d)  That a large part of the attending public arrives by private automobile causing serious congestion in the immedi-

ate vicinity of the plaintiffs' property, thereby creating a serious traffic hazard;

(e) That the Kalispell Pee Wee Baseball League, without the consent of the City of Kalispell, and other persons, erected light poles, flood lights, backstops, screens, fences and other structures on said real estate which items detract from the value and enjoyment of plaintiffs' property; and

(f) That the above-circumstances and conditions created undue interference with the plaintiffs' peaceful, quiet, use and enjoyment of their property.

The court then went on to its conclusions of law, finding that the above-circumstances clearly set forth facts describing a nuisance within our statute, section 93-6101 and section 57-101 R.C.M.1947, which provide:

"93-6101. *Nuisance defined and actions for.* Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so far as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.

"57-101. *Nuisance defined.* Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway is a nuisance."

This, in spite of substantial evidence that no nuisance existed.

In reality the matter is now moot, for it should be noted that since the lower court's decision the respondents Kasala have sold their home and moved away, and with the advent

of daylight saving time, lights are no longer necessary so the city has removed them from Thompson Field.

Assuming arguendo that the evidence of the respondents was uncontradicted, the holdings of the lower court are not supportable at law. While the appellants admit that baseball, or any other game, could under certain circumstances become a nuisance, such circumstances do not exist in this case.

"The game of baseball is not a nuisance per se, although played in the vicinity of residences, and neither is a baseball park." 4 Am.Jur.2d, Amusements and Exhibitions, § 42, p. 163.

Courts in considering the criteria of what should constitute interference with a property owner's peaceful enjoyment of his property have held that it is the ordinary and reasonable person's complaint that should serve as a basis for what is a nuisance. The Oregon court in Amphitheaters, Inc. v. Portland Meadows, 184 Or. 336, 198 P.2d 847, 5 A.L.R.2d 690, in considering whether a drive-in theater was a nuisance to adjacent landowners stated:

"Again it is held that whether a particular annoyance or inconvenience is sufficient to constitute a nuisance depends upon its effect upon an ordinarily reasonable man, that is, a normal person of ordinary habits and sensibilities. * * * [The Oregon case continues in its consideration of whether lights become a nuisance under certain conditions.]

"* * * The case differs fundamentally from other cases, all typical cases of nuisance, in that light is not a noxious, but is, in general, a highly beneficial element. The development of parks and playgrounds equipped for the enjoyment of the working public, whose recreation is necessarily taken after working hours, and frequently after dark, is a significant phenomenon in thousands of urban communities. The court takes judicial knowledge that many lighted parks and fields are located adjacent to residential property and must

to some extent interfere with the full enjoyment of darkness (if desired), by the residents.

"We do not say that the shedding of light upon another's property may never under any conditions become a nuisance, but we do say that extreme caution must be employed in applying any such legal theory. The conditions of modern city life impose upon the city dweller and his property many burdens more severe than that of light reflected upon him or it."

The respondents contend that the case resolves itself to one of property rights versus the national sports, baseball, and that historically, when this national sport is involved, prejudice and passion overrule reason and law. To this argument we must answer that property rights were long recognized and established before the advent of our national sport, however, the law does not in every instance provide directly for compensation or fiscal redress for every *damnum* a man may sustain as a member of an organized society. It is established law that even an intentional interference with the use and enjoyment of land is not actionable unless the interference be both substantial and unreasonable. Restatement of Law of Torts, Vol. 4, § 822.

The respondents claim that traffic hazards and the improper use of streets and driveways for parking creates a public nuisance. These are matters subject to local police regulation and do not constitute a public nuisance. Rohan v. Detroit Racing Ass'n, 314 Mich. 326, 22 N.W.2d 433, 166 A.L.R. 1246.

Too, as previously noted the trial court based its conclusions that under our statutes, section 57-101 or 93-6101, R.C.M. 1947, there was a nuisance created under the facts set forth by respondents. Clearly no facts were shown that the maintenance of the Pee Wee ball grounds resulted in conditions which were injurious to health, or indecent, or offensive to the senses or were obstructions to the free use of property

116

or where there interferences created with the comfortable enjoyment of life or property.

It should be noted in considering the court's actions in this case that if a nuisance is private and arises out of the particular manner of the operation of a legitimate enterprise the court should have done no more than to point to the nuisance and decree methods of adoption calculated to eliminate the injurious features. Here it was possible to have eliminated the objectionable features which were alleged to have infringed upon the ordinary rights of the respondents, for equity may so decree, instead of compelling, as the trial court did here, the abatement of the use of the baseball field.

Under section 93-216, R.C.M.1947, the duty is imposed on this court to determine questions of fact in equity cases, and unless for good reason a new trial or the taking of additional evidence is ordered in the district court that court's decision will be affirmed. In approaching a final decision of this case we are not unmindful that, notwithstanding the provisions of the section above alluded to, it is a settled rule that this court will hesitate to overturn findings based upon substantially conflicting evidence, justifying an inference in favor of either party. Bouma v. Bynum Irrigation Dist., 139 Mont. 360, 364 P.2d 47; Havre Irrigation Co. v. Majerus, 132 Mont. 410, 318 P.2d 1076. However, in a case such as this, where there is little or no conflicting credible evidence, and where no substantial evidence has been furnished for a basis for the findings of the trial court, this court will not hesitate to finally determine the rights of the parties. If a clear and satisfactory showing is not made in support of the findings, this court in the furtherance of justice, in proper cases, will set them aside. Gray v. Grant, 62 Mont. 452, 206 P. 410.

Therefore, in the spirit of "Casey at the Bat," Oh, somewhere in this favored land dark clouds may hide the

sun. And somewhere bands no longer play and children have no fun. And somewhere over blighted lives there hangs a heavy pall. But in Kalispell, hearts are happy now, for the Pee Wee's can play ball.

The judgment of the trial court is reversed and the cause remained with directions to dismiss.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR and CASTLES, concur.

MR. JUSTICE HASWELL, took no part in the hearing or determination of this appeal.