819 P.2d 921

**John Hubert TAYLOR, Petitioner,**

v.

**The Honorable William SHERRILL, Judge of the Superior Court of the State of Arizona, County of Pima, Respondent,**

**and**

**The STATE of Arizona, Real Party In Interest.**

**No. CV–90–0449–PR.**

Supreme Court of Arizona, En Banc.

Oct. 24, 1991.

Susan A. Kettlewell, Pima County Public Defender by Peter J. Eckerstrom, Asst. Public Defender, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Thomas J. Zawada, Deputy County Atty., Catherine M. Shovlin, Deputy County Atty., Tucson, for State of Ariz.

Frederick S. Dean, Tucson City Atty. by R. William Call, Deputy City Atty., Laura Brynwood–Kitchen, Supervising Prosecutor, Tucson, for amicus curiae.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

The state seeks review of a court of appeals' opinion holding that the double jeopardy clause of the United States Con-

stitution applied to, and prohibited prosecution of, defendant's pending felony charges of aggravated assault and criminal damage. We granted the state's petition for review in part, and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## PROCEEDINGS IN THE TRIAL COURTS

On July 18, 1988, John Hubert Taylor (defendant) turned left into oncoming traffic and collided with another automobile, injuring its driver and passenger. Officers arriving at the scene issued several traffic tickets. Defendant was cited for violating three civil traffic laws: A.R.S. §§ 28–701 (speeding), 28–754 (unsafe turn), and 28–1253 (failure to provide proof of insurance). In addition, he was cited for violating four misdemeanor criminal laws: A.R.S. §§ 28–473 (driving on a suspended license), 28–692(A) (driving under the influence), 28–692(B) (driving with blood alcohol content (BAC) greater than .10%) and 13–2907.01 (providing police with false information).

When defendant failed to appear at a pretrial hearing in Tucson City Court, default civil judgments were entered against him on the speeding and unsafe turn citations. The record does not indicate the amount of the civil judgments or whether defendant paid them. Pursuant to a motion filed by the City Prosecutor's Office, the city court dismissed the two DUI-related misdemeanor charges and those charges were referred to the Pima County Attorney for prosecution.

Following proceedings in Pima County Superior Court, a jury convicted defendant of a number of criminal charges arising from the accident. Specifically, defendant was convicted of three misdemeanors: DUI, driving with BAC greater than .10%, and driving with a suspended license. Defendant was also convicted of the following felonies: theft (the car he was driving was stolen), two counts of aggravated assault, and two counts of criminal damage. Defendant did not appeal at that time. Later, however, he sought post-conviction relief pursuant to Rule 32, Ariz.R.Crim.P., 17

A.R.S. The trial court granted relief based on a change in the law concerning the admissibility of breathalyzer tests. The state sought review in the court of appeals.

In July 1990, the city court dismissed the misdemeanor charges of driving on a suspended license and providing false information to a police officer. The record does not disclose how or when the suspended license charge got back to the city court or the disposition of the failure to provide proof of insurance citation.

While the state's petition for review on the breathalyzer issue was pending in the court of appeals, defendant filed a motion to dismiss the felony aggravated assault and criminal damage charges in the superior court. He argued that the double jeopardy clause of the United States Constitution barred prosecution of those felony charges because the default civil judgments for speeding and unsafe turn had already placed him in jeopardy. When the trial court denied his motion to dismiss, defendant filed a petition for special action with the court of appeals. That court accepted jurisdiction and consolidated the special action with the state's petition for review.

## PROCEEDINGS IN THE COURT OF APPEALS

Although defendant's double jeopardy argument in the court of appeals was somewhat unclear, we believe it can fairly be summarized as follows: The facts of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), are "nearly identical" to this case. *Grady*, together with *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), "make it clear that even non-criminal traffic tickets constitute prior jeopardy ..." Pet. for Special Action at 10. Defendant further argued that the defendant in *Grady* received a traffic ticket for failing to keep to the right of the median, a "traffic infraction" under New York law. Under New York law, a traffic infraction "is not a crime, and the penalty or punishment imposed therefor shall not be deemed for any purpose a penal or criminal penalty or pun-

ishment." N.Y.Veh. & Traf.Law § 155 (McKinney 1986). Defendant argues from this analysis of New York law that *Grady* held that jeopardy attaches to a civil traffic infraction. This presumed *Grady* holding was "no oversight," defendant asserts, because the Court in *Halper* had already held that jeopardy attached to civil sanctions. Continuing, defendant argues that he was placed in jeopardy when he "pled guilty" to the unsafe turn and speeding charges. Defendant concludes,. therefore, that the double jeopardy clause bars his prosecution in superior court on aggravated assault and criminal damage charges because he was "placed in jeopardy" for the "same conduct" when the city court entered civil default judgments on the unsafe turn and speeding citations.

In an opinion dealing with the consolidated cases, the court of appeals first addressed the state's petition for review. *Taylor v. Sherrill,* 166 Ariz. 359, 361–62, 802 P.2d 1058, 1060–61 (App.1990). It affirmed the trial court's order granting post-conviction relief based on grounds relating to the breathalyzer results. *Id.* at 362, 802 P.2d at 1061. That portion of the court of appeals' opinion is not here on review.

The court of appeals then addressed the merits of the defendant's special action based on double jeopardy. It held that the civil default judgments entered against defendant for speeding and an unsafe turn had "placed him in jeopardy." The court of appeals either prohibited defendant's prosecution for aggravated assault and criminal damage altogether, or permitted prosecution but precluded use of evidence of the unsafe left turn and speeding. *Id.* at 364, 802 P.2d at 1063.

Because *Grady v. Corbin* has produced, and continues to produce, a deluge of double jeopardy claims in Arizona trial and appellate courts, we granted the state's petition for review to provide guidance to Arizona courts in this difficult area of constitutional law.

## QUESTIONS PRESENTED

We granted review on several issues, but address only those which we find to be dispositive. They are: (1) Whether entry of the civil default judgments constituted a prior "prosecution" for double jeopardy purposes, thus barring a second prosecution; and (2) Whether entry of the civil default judgments constituted "punishment" of the defendant for purposes of the double jeopardy clause, thus barring a second punishment.

## DISCUSSION

### I. Introduction

The fifth amendment to the United States Constitution states: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It applies to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062 (1969). While the Arizona Constitution also contains a double jeopardy clause, Ariz. Const. art. 2, § 10, we do not separately discuss it because defendant relied solely on the federal constitution in his arguments to the trial court and the court of appeals.

The United States Supreme Court has interpreted the double jeopardy clause to protect against: (1) a second prosecution for the same offense following acquittal; (2) a second prosecution for the same offense following conviction; and (3) multiple punishment for the same offense. *Grady v. Corbin,* 495 U.S. 508, 515–516, 110 S.Ct. 2084, 2090 (1990) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969)). These three double jeopardy protections collectively forbid two things: multiple prosecutions and multiple punishment.

Two recent Supreme Court opinions, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), have significantly added to the country's double jeopardy jurisprudence. *Grady,* a multiple prosecution decision, and *Halper,* a multiple punishment decision, have generated a spate of double jeopardy claims in Arizona courts.

*See, e.g., State v. Nichols,* 168 Ariz. 469, 815 P.2d 396 (App.1991) (automatic license suspension pursuant to arrest for DUI and subsequent administrative hearing sustaining suspension neither prosecution nor punishment for double jeopardy purposes; subsequent criminal prosecution for DUI not barred); *Mullet v. Miller,* 168 Ariz. 594, 816 P.2d 251 (App.1991) (proceedings before Arizona Corporation Commission not prosecutions under *Grady,* but case remanded to determine if administrative penalty assessed by Commission constitutes punishment under *Halper* sufficient to bar criminal prosecution). We believe, however, that defendant's argument and the court of appeals' opinion in this case overstate the proper scope and application of *Grady* and *Halper.*

## II. Multiple Prosecution Analysis

■ The double jeopardy clause forbids prosecuting any person a second time for the same offense after either acquittal or conviction. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The rationale behind barring second prosecutions is that no one should be "forced to run the gauntlet" more than once. *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225 (1957). As stated in *Green:*

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity....

*Id.* at 187, 78 S.Ct. at 223. Additionally, multiple prosecutions allow the state to hone its presentation, increasing the chance of conviction. *Grady,* 495 U.S. at 518, 110 S.Ct. at 2091–92.

■ Defendant argued, and the court of appeals apparently agreed, that civil default judgments entered on speeding and unsafe turn charges barred a second prosecution for felonies involving the same conduct, *i.e.,* the pending aggravated assault and criminal damage charges. We disagree, and conclude that defendant was not "prosecuted" for the civil speeding and unsafe turn citations.

### 1. *Grady* Analysis

Despite certain similarities between the two cases, *Grady* does not forbid defendant's prosecution for aggravated assault and criminal damage. In *Grady,* the defendant drove his automobile across a double yellow line and struck two oncoming vehicles, killing one passenger and injuring others. 495 U.S. at 511, 110 S.Ct. at 2087–88. He received two traffic tickets arising from the incident. *Id.* at 511, 110 S.Ct. at 2088. The first charged him with driving while intoxicated, a misdemeanor under New York law. N.Y.Veh. & Traf.Law § 1192(3) (McKinney 1986). The second charged him with failure to keep to the right of the median, an "infraction" under New York law. *Id.* §§ 1120(a) and 155. While prosecutors were gathering evidence for a homicide prosecution, defendant "pleaded guilty to the two traffic tickets" in Justice Court. *Grady,* 495 U.S. at 511–512, 110 S.Ct. at 2088. The court accepted his guilty plea. *Id.* Ultimately, defendant was "sentenced" to a $350 fine, a $10 "surcharge", and had his license revoked for six months. *Id.* at 513, 110 S.Ct. at 2089.

Approximately two months later, defendant was indicted for reckless manslaughter, vehicular manslaughter, negligent homicide and reckless assault. *Id.* The prosecution's bill of particulars revealed that the state would rely on defendant's intoxicated condition and failure to keep to the right of the median to prove the manslaughter and assault charges. *Id.* at 513–514, 110 S.Ct. at 2089.

Justice Brennan, writing for a 5–4 majority, expanded the analytic framework to be used in resolving double jeopardy challenges to successive prosecutions. Prior to *Grady,* the Court employed the test set forth in *Blockburger v. United States,* 284

U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Grady* Court reiterated the test as follows: "[T]he Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not 'requir[e] proof of a fact which the other does not.'" *Grady*, 495 U.S. at 510, 110 S.Ct. at 2087 (citing *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182).

The *Grady* Court held that *Blockburger* establishes the threshold inquiry, and that successive prosecutions surviving the test may still violate the double jeopardy clause under certain circumstances. Those circumstances, according to the Court, are implicated when "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 521–522, 110 S.Ct. at 2093.

Based on the facts presented in *Grady*, the Court concluded that the double jeopardy clause barred the second prosecution. The Court reasoned that the state's bill of particulars would "prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep to the right of the median—to establish essential elements of the homicide and assault offenses." *Id.* at 523, 110 S.Ct. at 2094.

The key element of *Grady* is the Court's underlying assumption that the initial proceedings were in fact a "prosecution." Corbin was charged with a misdemeanor, entered a plea of guilty, and was subsequently sentenced. There is no indication in *Grady* that any party or the court contested that the proceedings resulting in guilty pleas in the Town Justice Court were anything *but* prosecutions.

Defendant in the instant case contends that because Corbin was charged and sentenced for a traffic "infraction" (failure to keep right of the median) under New York law, the holding in *Grady* should be extended to criminal prosecutions following civil proceedings in Arizona. Whatever the relative merits of this foray into the intricacies of New York law, we believe that defendant and the court of appeals read *Grady* too expansively.

Default judgment was entered against defendant on two civil traffic violations. The proceedings were not criminal in nature, and therefore not "prosecutions" for double jeopardy purposes. *Grady* is simply inapplicable to the present case. The Supreme Court's "same conduct" test was premised on the assumption that a prior prosecution occurred. Because we find that the resolution of civil traffic violations are not prosecutions, *see infra*, we hold that jeopardy did not attach when the trial court entered default judgment against the defendant.

Moreover, we think it highly unlikely that the Supreme Court would depart from the well-settled principle, in multi-prosecution analysis, that "the risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal,'" *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785 (1975) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 398, 58 S.Ct. 630, 633 (1938)), without explicitly saying so. *See also* W. LaFave & J. Israel, *Criminal Procedure* § 24.1(b) (1984). *Grady* is a significant addition to double jeopardy jurisprudence, but, as we interpret it, applies only when the conduct at issue has been charged and tried in a prior prosecution.

### 2. *Halper* Analysis

Defendant and the court of appeals, however, do not rely solely on *Grady*. They also read *Halper*, which we discuss in greater detail in Section III of this opinion, as blurring the distinction between civil and criminal proceedings in a double jeopardy analysis.

However, *Halper*, like *Grady*, does not provide any guidance on whether a particular proceeding is a "prosecution." Indeed, the *Halper* Court states that:

*while recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a*

*proceeding,* or in determining the constitutional safeguards that must accompany those proceedings as a general matter, the approach is not well suited to the context of the "humane interests" safeguarded by the Double Jeopardy Clause's proscription of multiple punishments.

490 U.S. at 447, 109 S.Ct. at 1901 (emphasis added). Thus, *Halper* does not *reject* the statutory interpretation approach for determining the criminal or civil nature of a proceeding. Rather, it *distinguishes* that inquiry from the analysis necessary to resolve a multiple punishment claim. *"The notion of punishment ...* cuts across the division between the civil and the criminal law, and *for the purposes of assessing whether a given sanction constitutes multiple punishment* barred by the Double Jeopardy Clause, we must follow the notion where it leads." *Id.* (emphasis added). *Halper* did not involve a second prosecution, nor did it alter the traditional statutory interpretation analysis of what constitutes a criminal proceeding. *Id.* at 440, 109 S.Ct. at 1897. *Halper* holds only that a civil sanction may, in the rare case, constitute punishment proscribed by the double jeopardy clause. *Id.* at 449, 109 S.Ct. at 1902. Thus, neither *Halper* nor *Grady* support the conclusion that defendant was prosecuted for the civil traffic violations.

*Halper* does, of course, establish that a defendant may receive "punishment" for double jeopardy purposes in a civil proceeding. It does not, however, establish when a particular proceeding, though nominally civil, is in reality a criminal proceeding, and thus a prosecution at which jeopardy attaches for purposes of the multiple prosecution protection. For the answer to that question, we must turn to *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

### 3. Defendant was Not Prosecuted

■ Notwithstanding *Grady* and *Halper,* we believe that the test articulated in *Ward* is still applicable in determining whether a particular proceeding is civil or criminal in nature. *See Purcell v. United States,* 594 A.2d 527 (D.C.App.1991) (adopting the *Ward* test to determine whether a traffic ticket proceeding was criminal).

The *Ward* inquiry is twofold. We first inquire whether the legislature "indicated either expressly or impliedly a preference for" a civil or criminal label. *Ward,* 448 U.S. at 248, 100 S.Ct. at 2641. Second, if the legislature has indicated that it intended to establish a civil penalty, we must determine if the statutory scheme is "so punitive either in purpose or effect as to negate that intention." *Id.* at 249, 100 S.Ct. at 2641. If so, then even a nominally civil proceeding will be treated as criminal in nature and will constitute a prosecution for double jeopardy purposes. However, "only the clearest proof" will establish that a statute fails the second part of the *Ward* test. *Id.* at 249, 110 S.Ct. at 2641 (quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376 (1960)).

Applying the two-pronged *Ward* test, we conclude that the trial court's entry of default judgment against the defendant for the civil traffic tickets was not a criminal proceeding and therefore not a "prosecution." With respect to the first *Ward* inquiry, we note that in 1983, the Arizona Legislature decriminalized most traffic offenses, including the two traffic offenses at issue here. Laws 1983, Ch. 271, § 49. Moreover, as Division One noted in *State v. Walker:*

> [T]he statutes that give rise to defendant's appearance in city court, A.R.S. §§ 28–1071 *et seq.,* are designated "Procedure for Adjudication of Civil Traffic Violations." These statutes specifically provide that "[v]iolations of statutes relating to traffic movement and control ... shall be treated as civil matters...." A.R.S. § 28–1071(A). The burden of proof in these proceedings shall be "by a preponderance of the evidence," A.R.S. § 28–1076(C), and the "civil sanction" shall not exceed $250. A.R.S. § 28–1076(E). Moreover, a person charged with a civil traffic violation is not entitled to a jury trial. A.R.S. § 28–1076(C).

159 Ariz. 506, 508, 768 P.2d 668, 670 (App. 1989). There can be no doubt that the

legislature intended the proceedings and penalties for "civil traffic violations," including speeding and unsafe turns, to be civil.

Turning to the second *Ward* inquiry, we conclude that defendant has not provided "the clearest proof" that the purpose or effect of the statutory scheme is "so punitive" as to negate the civil label. We agree with the court of appeals' conclusion in *Walker* [1] that Arizona's Civil Traffic Violation statutes are not punitive in either purpose or effect. *Walker*, 159 Ariz. at 508, 768 P.2d at 670 (citing *Ward*). These statutes, therefore, survive the second inquiry in *Ward*.

We conclude, therefore, that proceedings involving civil traffic violations are civil in nature. They are not prosecutions at which jeopardy can "attach." *See Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062 (1975) (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554 (1971)) (jeopardy attaches when defendant is "put to trial before the trier of facts...."). *See also Purcell*, 594 A.2d at 528 (concluding that traffic offenses which had been decriminalized were civil in nature and not a prosecution). *Cf. State v. Sheehan*, 167 Ariz. 370, 807 P.2d 538 (App. 1991) (civil traffic violation does not constitute probation violation). Thus, entering civil default judgments for failure to appear at a pretrial hearing did not constitute a "prosecution" within the meaning of the double jeopardy clause. Accordingly, defendant's trial for aggravated assault and criminal damage does not constitute a second prosecution, and therefore does not violate the double jeopardy clause's multiple prosecution prohibition.

Having concluded that defendant's trial for aggravated assault and criminal damage is not a second prosecution, we turn to defendant's argument that it constitutes a second punishment.

### III. Multiple Punishment Analysis

■ As previously noted, the double jeopardy clause forbids multiple punishment for the same offense. *Grady*, 495 U.S. at 516–517, 110 S.Ct. at 2090. The government may, however, impose both a criminal and civil penalty for the same act or omission. *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633 (1938). If the government imposes a criminal and civil sanction in a single proceeding, the court's role is limited to determining that "the total punishment did not exceed that authorized by the legislature." *Halper*, 490 U.S. at 451, 109 S.Ct. at 1903 (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679 (1983)). *Halper*, however, holds that a disproportionately large civil sanction imposed in a subsequent civil proceeding can, under certain, limited circumstances, constitute punishment within double jeopardy's multiple punishment prohibition. *Id.* at 449, 109 S.Ct. at 1902.

■ The defendant contends that he was "punished" when default judgments were entered against him for failure to appear on the unsafe lane change and speeding charges and, therefore, under *Halper*, the state cannot now punish him a second time without violating the double jeopardy clause's multiple punishment proscription. He argues that civil sanctions for traffic violations are punishment because they are meant to deter such conduct. The court of appeals agreed. Even under *Halper*, however, we conclude that defendant was not punished within the meaning of the double jeopardy clause for the speeding and unsafe lane change violations.

In *Halper*, the respondent submitted sixty-five false Medicare claims, each overcharging the government by $9, and cumulatively overbilling the government $585. 490 U.S. at 437–38, 109 S.Ct. at 1895–96. Halper was prosecuted, convicted, and sentenced to two years' imprisonment and

---

1. Defendant argues that *Grady* and *Halper* contradict and therefore overrule *Walker*. We disagree. *Halper* holds only that a civil sanction can be considered punishment if, as applied, its purpose is not remedial. *Walker*'s conclusion

that sanctions for civil traffic offenses in Arizona are remedial is consistent with *Halper*. Similarly, nothing in *Grady* holds that the state prosecutes persons for civil traffic violations.

fined $5,000 for submitting the false claims. *Id.* at 438, 109 S.Ct. at 1896.

Following Halper's criminal prosecution, the government brought a civil suit based on the same sixty-five false Medicare claims. The civil False Claims Act provided for a civil penalty of $2,000 for each violation, plus two times the government's actual damages, and court costs, subjecting Halper to a civil sanction of more than $130,000. *Id.* at 438, 109 S.Ct. at 1896 (citing 31 U.S.C. § 3729). The district court concluded that imposing such a sanction would violate the double jeopardy clause's bar against multiple punishment. *Id.* at 440, 109 S.Ct. at 1897. The district court allowed only the recovery of double damages, or $1,170, and the court costs of the civil action. *Id.*

■ The United States Supreme Court stated that the sole question presented was "whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment' for the purpose of double jeopardy analysis." *Id.* at 441, 109 S.Ct. at 1898. The Court concluded that:

> [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.* at 449, 109 S.Ct. at 1902. Thus, even if a proceeding does not qualify as a prosecution for purposes of double jeopardy's multiple prosecution protection, the sanction imposed in a "non-prosecution" may constitute a second punishment for the same offense, thereby violating double jeopardy's multiple punishment prohibition. As applied here, if defendant was "punished" for speeding and making an unsafe turn, the double jeopardy clause would bar a second punishment for the same conduct.

Preliminarily, we note that *Halper* involved a criminal prosecution followed by a civil proceeding. Defendant, on the other hand, seeks to prevent a criminal prosecu-

tion following a civil proceeding. We do not, however, read *Halper* to be limited to cases where civil proceedings follow criminal proceedings. We do not believe the order of the proceedings is significant.

■ *Halper* does, however, contain several significant limitations. First and most importantly, *Halper* teaches that punishment is not measured from the defendant's perspective:

> *This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective.* On the contrary, our cases have acknowledged that *for the defendant even remedial sanctions carry the sting of punishment.*

*Id.* at 1901 n. 7, 109 S.Ct. at 1901 n. 7 (emphasis added). Thus, the effect of the fine from defendant's perspective is irrelevant for purposes of double jeopardy analysis.

■ Second, a civil sanction will rarely constitute punishment within the double jeopardy clause. *Id.* at 449, 109 S.Ct. at 1902 ("we announce ... *a rule for the rare case* ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused") (emphasis added). The Court discussed several cases holding that large civil sanctions did not constitute "punishment" protected by the double jeopardy clause. *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (assessment of fifty percent civil administrative sanction for tax evasion, amounting to $364,354.92, was not barred by acquittal of defendant for criminal violation of revenue code); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (conviction for criminal conspiracy to defraud the United States government did not bar subsequent civil suit resulting in $315,000 in fines; "remedy does not lose the quality of a civil sanction because more than the precise amount of so-called actual damage is recovered"); *Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) (imposition of civil damages for fraudulent purchases in viola-

tion of federal Surplus Property Act not barred by prior criminal conviction based on same transactions); and *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (civil forfeiture proceeding not barred by prior acquittal of defendant on criminal smuggling charges involving goods subject to forfeiture). The *Halper* court, considering these cases and *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), concluded that they taught only that the government

> is entitled to rough remedial justice, that is, it *may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis.*

*Id.* 490 U.S. at 445, 109 S.Ct. at 1900 (emphasis added). The Court concluded that a trial court has discretion to order an accounting from the government only where "a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss...." *Id.* at 449, 109 S.Ct. at 1902.

We believe the defendant advancing a *Halper* claim must bear the burden of demonstrating to the trial court that a previous civil sanction constituted "punishment" within the double jeopardy clause. Here, defendant has not demonstrated that he was punished for speeding and making an unsafe turn. The record shows only that the city court entered default judgments against him when he failed to appear at a pretrial conference. The record does not indicate the amount of these judgments, or if defendant ever paid them or ever will pay them. The maximum sanction defendant could have received for each ticket is $250. A.R.S. § 28–1076(E). Additionally, defendant claims his license was suspended. The record does not support this assertion, but we note that A.R.S. § 28–1058 directs traffic complaints to warn drivers

that their license will be suspended *if they fail to appear*. It does not authorize suspension only for speeding or lane change violations.

Moreover, defendant's bald assertion that sanctions for civil traffic violations are commonly understood as serving deterrent purposes, and are, therefore, punitive for double jeopardy purposes, is unpersuasive. We agree with the court of appeals' conclusion in *Walker*, and conclude as a matter of law that the sanctions which could be imposed for the civil traffic violations in this case are remedial in nature, and therefore do not constitute punishment within the double jeopardy clause's multiple punishment prohibition. *See Halper*, 490 U.S. at 449, 109 S.Ct. at 1902 (defendant may not be subjected to civil sanction to the extent "sanction may not fairly be characterized as remedial...."). Because defendant has not previously been punished within the meaning of the double jeopardy clause, his trial for aggravated assault and criminal damage will not subject him to a prohibited second punishment.

### CONCLUSION AND DISPOSITION

For double jeopardy purposes, defendant's trial for aggravated -assault and criminal damage is not a second prosecution nor can it result in a second punishment. We therefore affirm the trial court's denial of defendant's motion to dismiss those charges and vacate that portion of the court of appeals' opinion entitled "Denial of Motion to Dismiss." The case is remanded to the trial court for proceedings consistent with this opinion and the unvacated portion of the court of appeals' opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.