[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue raised by the defendant's motion to dismiss is whether the fine for improper parking of a motor vehicle in violation of General Statutes 14-251[1] is a criminal penalty thereby prohibiting under the Double Jeopardy Clause a second trial before a judge in accordance with General Statutes51-193u[2] after an acquittal before a magistrate. This court holds that the fine for such a matter vehicle infraction is not a criminal penalty and that, therefore, a proceeding in which such a fine may be assessed is not a criminal proceeding to which the Double Jeopardy Clause is applicable. To the extent that State v. William P., 41 Conn. Sup. 356, 575 A.2d 715 (1990), is inconsistent with this holding, this court declines to follow it.
The defendant received a summons for improper parking, in violation of General Statutes 14-251, and for failure to renew her matter vehicle operator's license, in violation of General Statutes 14-41 (d). After a trial before a magistrate pursuant to General Statutes 51-193u(a), the defendant was acquitted of the former charge and convicted of the latter charge. Thereafter the state timely demanded a trial de novo of the infraction of improper parking. The defendant has moved to dismiss the case claiming that a trial de novo is barred by the double jeopardy clause. Such a defense is properly raised by a motion to dismiss. Practice Book 815 (6); State v. William P., supra, 357.
"The double jeopardy clause of the fifth amendment to the United States constitution provides: `[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.' This constitutional provision is applicable to the CT Page 9896 states through the due process clause of thefourteenth amendment. Benton v. Maryland, 395 U.S. 784, 794,89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, 9, include protection against double jeopardy. Kohlfuss v. Warden,149 Conn. 692, 695, 183 A.2d 626, cert. denied. 371 U.S. 928,83 S.Ct. 298, 9 L.Ed.2d 235 (1962). This constitutional guarantee serves three separate functions: (1) "`It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) [, overruled on other grounds, Alabama v. Smith, 490 U.S. 794,109 S.Ct. 2201, 104 L.Ed.2d 265 (1989)].' State v. Lonergan,213 Conn. 74, 78-79, 566 A.2d 677 (1989), cert. denied, ___ U.S. ___,110 S.Ct. 2586, 110 L.Ed.2d 267 (1990)." State v. Chicano,216 Conn. 699, 705-706, 584 A.2d 425 (1990), cert. denied, ___ U.S. ___,111 S.Ct. 2898, 115 L.Ed.2d 1062 (1991).
It is the first of these protections with which we are concerned here, a second prosecution after an acquittal. The rationale behind barring a second prosecution is that no one should be "forced to run the gauntlet" more than once. Green v. United States, 355 U.S. 184, 190, 78 S.Ct. 221, 2 L.Ed.2d 199
(1957). "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . . ." Id., 187. Furthermore, successive prosecutions allow the state to hone and "rehearse its presentation of proof" and to perfect its evidence through successive attempts at conviction. Grady v. Corbin, 495 U.S. 508,518, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).
However, the double jeopardy clause only prohibits successive criminal prosecutions or punishments for the same act. Where a particular proceeding is not obviously of a criminal nature in the traditional sense, the cases have focused on the nature of the punishment imposed or sought to be imposed. "Fines, of course, are treated in the same way as prison sentences for purposes of double jeopardy and multiple punishment CT Page 9897 analysis." Jeffers v. United States, 432 U.S. 137, 155,97 S.Ct. 2207, 53 L.Ed.2d 190 (1977), reh. den. 434 U.S. 880, 98 S.Ct. 24154 L.Ed.2d 164 (1977). But "[u]nless th[e] sanction [of a fine] was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable." Helvering v. Mitchell, 303 U.S. 391, 398-99, 58 S.Ct. 630, 82 L.Ed. 917
(1938).
"The application of the double jeopardy clause to particular cases has not been an easy task for the courts." U.S. ex rel. Marcus v. Hess, 317 U.S. 537, 548, 63 S.Ct. 379, 87 L.Ed. 443
(1943). In United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636,65 L.Ed.2d 742 (1980), the Court set forth a two-part test for determining whether a particular statutorily defined penalty is civil or criminal. Starting from the premise that the question "is a matter of statutory construction," the Court said that its first task was to determine whether the legislature "indicated either expressly or impliedly a preference for one label or the other." Id., 248. "Second, where [the legislature] has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." Id., 248-49.
However, no issue as to double jeopardy was implicated in Ward. The issue there was whether "a proceeding for the assessment of a `civil penalty' under 311 (b) (6) of the Federal Water Pollution Control Act . . . is a `criminal case' within the meaning of the Fifth Amendment's guarantee against compulsory self incrimination." United States v. Ward, supra, 244. In United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892,104 L.Ed.2d 487 (1989), the United States Supreme Court articulated a test to determine whether a fine or monetary sanction implicated double jeopardy protections. With respect to the two-part test in Ward, the court stated that "while recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a proceeding, or in determining the constitutional safeguards that must accompany those proceedings as a general matter, the approach is not wall suited to the context of the `humane interests' safeguarded by the Double Jeopardy Clause's prescription of multiple punishments. See [United States ex rel. Marcus v.] Hess, 317 U.S. [supra] at 554 (concurring opinion of Frankfurter, J.). This constitutional protection is intrinsically personal. Its violation can be CT Page 9898 identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." United States v. Halper, supra, 447. "This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant, even remedial sanctions carry the sting of punishment." Id., 447n. 7.
"In making this assessment, the labels `criminal' and `civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. . . . The notion of punishment, as we commonly understand it, cuts across the division between the civil and criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423,99 L.Ed.2d 721 (1988). (`[T]he labels affixed either to the proceeding or to the relief imposed . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law'). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." United States v. Halper, supra, 447-448 (footnote omitted). The goals of punishment are retribution and deterrence. Id., 448. Therefore "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term." Ibid. (emphasis added).
The Court further "noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. See e.g. Rex Trailer [Co. v. United States], 350 U.S. at 153 [76 S.Ct. 2919, 100 L.Ed. 149 (1956)]. Similarly, it would be difficult is not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole but beyond which the sanction takes on the quality of punishment. In other words . . ., the process of affixing a sanction that compensates the Government for all of CT Page 9899 its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavailable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." United States v. Halper, supra, 449. The Court underscored that it "cast no shadow on these time-honored judgments." Ibid.
Despite the plain statement in Halper, some courts have held that the twofold test in United States v. Ward, supra, remains viable in the double jeopardy context. See e.g. Taylor v. Sherrill, 163 Ariz. 335, 819 P.2d 921, 9270928 (1991); Purcell v. United States, 594 A.2d 527, 529-531 (D.C.App. 1991); State v. Darby, 246 N.J. Super. 432, 587 A.2d 1309, 1313 (App.Div. 1991). Although the issue in this case is the propriety of successive prosecutions and although the Court in Halper did characterize that case as one involving multiple punishments for the same offense; Halper, supra, 440; it nowhere suggested that the test there laid down was limited to that limited species of double jeopardy claims. Cf. State v. Lawton, 167 Wis.2d 461,482 N.W.2d 142, 145 n. 5 (App. 1992). Therefore, and since the legislative history of General Statutes 14-251 fails to illuminate whether the fine for its violation is punishment, this court will apply the Halper test and will examine the fine prescribed for the violation of 14-251 and the purposes that "the [fine] may fairly be said to serve" to determine whether it constitutes punishment. United States v. Halper, supra, 448. Legislative labels and the nature of the statutory scheme may be assessed not as discrete criteria in a Ward-like calculus, the product of which answers the inquiry, but only as evidence and only to the extent that they shed light on the purposes actually served by the sanction in question.
A violation of any provision of General Statutes 14-251 is an "infraction". See note 1, supra. This characterization excludes 14-251 violations from the definitions of "offense", "crime" and "violation". General Statutes 53a-24 (a) defines the term "offense" as "any crime or violation which constitutes a breach of any law . . . for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term `crime' comprises felonies and misdemeanors. Every offense which is not a `crime' is a `violation.'" (Emphasis added) General Statutes 53a-27 provides that "[a]n offense for which the only sentenced authorized is a CT Page 9900 fine, is a violation unless expressly designated an infraction." (Emphasis added.)
Infractions are not specifically defined in the General Statutes other than by the manner in which they are treated. "Infractions of the Law" are treated in General Statutes51-164m to 51-164r. The judges of the Superior Court are charged with the responsibility of establishing a schedule of fines for violations of the General Statutes deemed to be infractions. General Statutes 51-164m(a).[3] That statute provides for "a sliding scale of fines for speeding infractions . . . increasing in proportion to the severity of the violation." Ibid. Since such a "sliding scale" is prescribed only for speeding, the legislature intended that the fine for all other infractions be fixed. "`Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exhaustive.'" State v. Kish, 186 Conn. 757,766, 443 A.2d 1274 (1982). Except "for parking tag violations" and violations of the seat-belt and child restraint law, no fine may be less than thirty-five dollars or in excess of ninety dollars. General Statutes 51-164m(c). The court takes judicial notice that at the time of the occurrence giving rise to this case, the judges of the Superior Court had promulgated a schedule of fines in which the fixed fine for a violation of General Statutes 14-251 was sixty dollars.
A summons for the commission of an infraction is not deemed to be an arrest. General Statutes 51-164n(d); see State v. Carter, 189 Conn. 611, 617, 458 A.2d 369 (1983); State v. Zyko,1 Conn. App. 517, 518, 473 A.2d 337 (1984), cert. denied, 193 Conn. 804,475 A.2d 1104 (1984).[4] A nonresident of the state charged with an infraction is required to post a cash bond or a guaranteed bail bond certificate with the authority issuing the infraction summons, unless he is a resident of a state which has reciprocity with the commissioner of motor vehicles in this state with respect to suspension of operator's licenses. General Statutes 51-164o(a), (b).[5] If a person elects to pay the fine, he may mail payment of the fine and any additional fee or cost for the infraction to the centralized infractions bureau. Payments are made payable to the "clerk of the superior court". General Statutes 51-164n(b). "Such payment shall be considered a plea of nolo contendere and shall be inadmissible in any proceeding, civil or criminal, to establish the conduct of the person making payment", provided payment "shall not affect the application of administrative sanctions by the commissioner of CT Page 9901 motor vehicles." Ibid. "If the person elects to plead not guilty, he shall send the plea of not guilty to the centralized infractions bureau." General Statutes 51-164n(c). The trial may be held before a magistrate; there is no right to a trial by jury. See note 2, supra; State v. LoSacco, 12 Conn. App. 481,484, 531 A.2d 184 (1987), cert. denied, 205 Conn. 814,533 A.2d 568 (1987). "In any trial for the alleged commission of an infraction, the practice, procedure, rules of evidence and burden of proof applicable in criminal proceedings shall apply. Any person found guilty at the trial or upon a plea shall be guilty of an infraction and shall be fined not less than thirty-five dollars nor more than ninety dollars." General Statutes51-164n(f); see State v. Plaskonka, 22 Conn. App. 207, 208-209,577 A.2d 729 (1990), cert. denied, 216 Conn. 812 (1990). "Any person charged with an infraction who fails to pay the fine and any additional fee imposed or send in his plea of not guilty by the answer date or to appear for any trial which may be required shall be guilty of a class C misdemeanor." General Statutes 51-164r.
Applying the Halper test to the statutory scheme for treatment of infractions "yields a mixed result". State v. Darby, 246 N.J. Super. 432, 587 A.2d 1309, 1314 (1991). On the one hand, a nonresident receiving a summons for an infraction is required to post a bond, the plea to an infraction may be "not guilty", and the same "practice, procedure, rules of evidence and burden of proof applicable in criminal proceedings shall apply" in any trial for the commission of an infraction. These factors are suggestive of a criminal proceeding. Cf. State v. Knowles,199 Neb. 211, 256 N.W.2d 873, 875 (1977). So too, the legislature's use of the word "fine" as a sanction traditionally has connoted punishment, at least when the word has been used in connection with a crime or misdemeanor. Bankers Trust Co. v. Blodgett, 96 Conn. 361, 368, 114 A. 104 (1921), affirmed,260 U.S. 647, 43 S.Ct. 233, 67 L.Ed. 439 (1923). However, in Second National Bank of New Haven v. Loftus, 121 Conn. 454, 459,185 A. 423 (1936), the court in dicta stated that a fine could include a forfeiture. It is now settled that a forfeiture is not necessarily punishment for purposes of double jeopardy analysis. See e.g. United States v. Killough 848 F.2d 1523, 1532-34 (11th Cir. 1988). More troubling is that, in recent years, when the General Assembly has intended to characterize a sanction as a civil penalty or as a forfeiture, it has expressly done so. See e.g. General Statutes 19a-17 (a)(6) (administrative boards or commissions regulating professions may assess a "civil penalty" CT Page 9902 of up to $1,000 based on misconduct and for good cause); General Statutes 22a-376 (b) (person who unlawfully diverts state waters "shall forfeit to the state a sum not to exceed $1,000.").
However, "it is the purposes actually served by the sanction in question, not the underlying nature of the proceedings giving rise to the sanction, that must be evaluated" to determine whether that sanction is punishment and, hence, subject to double jeopardy analysis. United States v. Halper, supra, 447n. 7. Three cogent reasons persuade the court that the fine for violating General Statutes 14-251 is not punitive.
Firstly, the fine for improper parking in violation of General Statutes 14-251 is a fixed sum, unlike the sanction for speeding in violation of General Statutes 14-219 which is graduated in proportion to the severity of the violation. Secondly, the prescribed fine for improper parking is only sixty dollars. Under our case law, this is a nominal amount. Hammerland v. Troiano, 146 Conn. 470, 473, 152 533 A.2d 314
(1959); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234
(1987) (no error in setting aside jury's verdict for plaintiff in the amount of "$00" and ordering a new trial unless defendant filed additur for nominal damages of $100.) As the Supreme Court in Halper recognized, "the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. . . . [A] sanction that compensates the Government for all of its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this avoidable imprecision." United States v. Halper, supra, 449. Thirdly, General Statutes 51-56a(b) requires that the state "remit to the municipalities in which the violations occurred all amounts received in respect to the violation of sections 14-251, 14-252, 14-253a and 14-305 to 14-308, inclusive. . . ." (Emphasis added.) This evidences a legislative recognition that a violation of General Statutes 14-251 visits some small amount of damage on the municipality in which the violation occurred and that it is the municipality, rather than the state, which ought to be made whole.
The United States Supreme Court has long held that the expense of investigation may be taken into account when fixing the Government's loss and determining whether a fine or penalty is punitive or remedial. Helvering v. Mitchell, supra, 401. And "in the wake of Halper, other courts have expressly approved of taking the costs of investigation and litigation into account CT Page 9903 when fixing the government's loss. See e.g. [United States v.] Walker, 940 F.2d at 444 [9th Cir. 1991]; United States v. Fliegler, 356 F. Sup. at 697 [E.D.N.Y. 1990]; United States v. [WRW] Corp., 731 F. Sup. at 238 [E.D.Ky. 1989]. Indeed, to hold otherwise would rewrite a well established line of authority approving the consideration of such costs in calculating the extent of the government's loss in order to determine whether a given sanction is remedial or punitive. See One Lot Emerald Cut Stones, 409 U.S. at 237, 93 S.Ct. at 493; Helvering v. Mitchell, [supra], 401. . . ." United States v. Furlett, 781 F. Sup. 536, 547
(N.D.Ill. 1991). While there may not be much of an "investigation", in the ordinary sense of the word, in connection with summary motor vehicle infractions such as improper parking, a small or nominal fine such as that prescribed for a violation of General Statutes 14-251 bears a rational relation to the municipality's cost of enforcing that state traffic law. Purcell v. United States, supra, 531; State v. Naydihor, 483 N.W.2d 253,258-59 (Wis.App. 1992); see also Matter of Bruce, 103 N.C. App. 81,404 S.E.2d 480, 482 (1991). Moreover, while neither the statute nor the common law may characterize an improperly parked car as a public nuisance; Kasala v. Kalispell Pee Wee Baseball League, 151 Mont. 109, 439 P.2d 65, 69, 32 A.L.R.3d 1120 (1968); Rohan v. Detroit Racing Assn., 314 Mich. 326, 22 N.W.2d 433, 445
(1946); it cannot be said that such an infraction of the law may not visit some nominal inconvenience, and hence damage, to the public. Cf. Keating v. Macdonald, 73 Conn. 125, 129, 46 A. 871
(1900) (obstruction in public street for unreasonable length of time may be a "common nuisance"); 39 Am.Jur.2d, Highways, Streets and Bridges, 273, 274; 58 Am.Jur.2d, Nuisances, 281 (nominal damages for nuisance), 66 C.J.S., Nuisances 176 (same).
While earlier cases were not in accord on the issue; compare State v. Knoles, supra; State v. Dively, 92 N.J. 573, 586,458 A.2d 502 (1983); Commonwealth v. Johnson, 319 Pa. Super. 463,472, 466 A.2d 636, 641 (1983), with People v. Battle, 50 Cal.App. 3
d Sup. 1, 123 Cal.Rptr. 636, 639 (1975); State v. Feiock,364 N.W.2d 536, 539-40 (S.D. 1985); Commonwealth v. Abell,275 Ky. 802, 122 S.W.2d 757 (1938); this court holds, as have other jurisdictions which have addressed the issue since Halper, that proceedings involving traffic or motor vehicle infractions in which only a small or nominal fixed fine may be imposed are civil and remedial in nature. "They are not prosecutions at which jeopardy can `attach'." Taylor v. Sherrill, supra,819 P.2d at 928 (en banc); see State v. Naydihor, supra; Purcell v. United States, supra; see also State v. Lawton, 167 Wis.2d 461, CT Page 9904 682 N.W.2d 142 (App. 1992); Matter of Bruce, supra. To the extent that State v. William P., supra, is inconsistent with this holding, this court declines to follow it.
In arriving at this conclusion, this court has not overlooked Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084,109 L.Ed.2d 548 (1990). In Grady, the defendant injured one person and killed another when he drove his vehicle across the median and collided with two oncoming vehicles. He was served with two traffic tickets. The first charged him with driving while intoxicated, a misdemeanor, in violation of N.Y. Veh. Traf. Law 1192 (3) (McKinney 1986). The second charged him with failing to keep right of the median, a "traffic infraction" in violation of 1120 (a). Id., 511. Under N.Y. Veh. Traf. Law 155 (McKinney 1986), not cited by the Supreme Court, "a traffic infraction is not a crime and punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment. . . ." The defendant pled guilty to the misdemeanor and received a "minimum sentence" of "a $350 fine, a $10 surcharge, and a 6-month license revocation." Id., 513.
Two months later, the defendant was indicted on charges or reckless manslaughter, vehicular manslaughter, negligent homicide and reckless assault, stemming from the same accident. Grady v. Corbin, supra, 513. To prove the homicide and assault charges, the prosecution stated that it intended to prove that the defendant was (1) operating a motor vehicle on a public highway in an intoxicated condition, (2) failing to keep right of the median, and (3) driving too fast for conditions. The defendant moved to dismiss the criminal indictment on double jeopardy grounds. Ultimately, the Supreme Court ruled in his favor, holding that the double jeopardy clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant already has been prosecuted. Id., 510.
However, in Grady, no issue was raised by the parties or by the Court as to the nature of the initial proceedings. Rather, the key to the Grady holding is the Court's "underlying assumption" that the initial proceedings were a criminal prosecution. See State v. Naydihor, supra, 483 N.W.2d at 257; Taylor v. Sherill, supra, 819 P.2d at 926. This assumption is evidenced throughout the Court's opinion in Grady. Indeed the very first sentence of the opinion reads: "We have long held CT Page 9905 that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes wherever each statute does not `requir[e] proof of a fact which the other does not.'" Grady v. Corbin, supra, 510 (emphasis added), quoting Blockburger v. United States 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed.2d 306
(1932). "Moreover, we think it highly unlikely that the Supreme Court would depart from the well-settled principle in multi-prosecution analysis, that `the risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not "essentially criminal."' Breed v. Jones, 421 U.S. 519,528, 95 S.Ct. 1179, 1785, 44 L.Ed.2d 346 (1975) (quoting Helvering v. Mitchell, [supra], 398. . .), without explicitly saying so." Taylor v. Sherrill, supra, 926. Accordingly, "we do not interpret Grady as discarding, sub silentio, the civil/criminal methodology that the Court has developed, culminating in United States v. Halper, and substituting in its place an as-yet-undefined but certainly less strict, analysis for applying the double jeopardy clause to civil penalties." State v. Lawton, supra, 482 N.W.2d at 148.
In conclusion, the court holds that the sixty dollar fixed fine for violating General Statutes 14-251 is remedial and compensatory, and that the proceedings for its assessment, therefore, are not criminal in nature for purposes of theFifth Amendment's right against double jeopardy. "Therefore, the Double Jeopardy Clause is not implicated in this case"; Matter of Bruce, supra; and the defendant's motion to dismiss is denied.
Levin, Judge