846 P.2d 843

**STATE of Arizona, Appellee,**

v.

**Efran Ismael CONDE, Appellant.**

**No. 1 CA–CR 90–0475.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 10, 1992.

Review Denied March 17, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Daniel J. Kiley, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James M. Likos, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GERBER, Judge.

### FACTS

Efran Ismael Conde was indicted for first-degree murder for the death of a Phoenix police officer as well as for fifteen other dangerous counts arising from the same incident. Following a jury trial, he was convicted of all sixteen counts.

The evidence at trial showed that he and an accomplice entered a bank armed with handguns which they pointed at customers and bank personnel. Conde leaped on the top of a counter and ordered a teller to place money in a plastic bag. He then ordered a customer to surrender her car keys so that he and his accomplice could escape. They obtained their getaway vehicle in the bank parking lot by taking it from its driver at gunpoint. At this juncture, the police officer, working off-duty as a bank security guard, opened fire on Conde and his accomplice. In the exchange of shots the officer was killed.

The robbers fled the scene in the stolen car. During the next half-hour, they commandeered two other vehicles at gunpoint. When police located Conde and ordered him to stop, he fired at them. He was wounded and was eventually taken into custody.

While hospitalized following his arrest, Conde was interrogated by police detective Saldate on two occasions. The first interrogation occurred at the intensive care unit of St. Joseph's Hospital. Saldate testified that Conde was then intubated and connected to intravenous lines when Saldate introduced himself and read him the Miranda warnings. Saldate testified that Conde was in pain and drifting in and out of consciousness. Occasionally, he had to shake him to get his attention. Conde made admissions regarding his participation in the bank robbery. These admissions were not used at trial.

A second interrogation occurred a week later in the detention ward of the Maricopa County Medical Center. Saldate testified that physically Conde "looked great" and had taken no medication prior to the interrogation. After Conde read Miranda warnings in English and Spanish from a police-issued card, Saldate interrogated him in English. Conde's statements were substantially the same as those made in the first interrogation, e.g., he indicated that he committed the robbery but denied shooting anyone. According to Saldate, Conde was polite and cooperative. Saldate testified that he used no force, threats or coercion to secure his responses.

The trial court found the second statement involuntary but ruled that it could be used for impeachment. The trial judge's ruling was premised upon the state's failure to promptly bring Conde before a magistrate for an initial appearance.[1] The court found that while the statements made in the first interrogation were involuntary and inadmissible, the admissions in the second interrogation could be used for impeachment because Conde validly waived his Miranda rights and had not been subjected to threats, physical abuse, promises or coercion.

At trial Conde waived the assistance of counsel. He defended himself assisted by advisory counsel. He argued that he was the victim of a police conspiracy to implicate him in the police officer's death. He claimed that adverse evidence had been counterfeited with the connivance of the prosecutor. He did not testify. After the guilty verdict, he was sentenced to life imprisonment for first-degree murder and to maximum sentences of 21 years on each count of armed robbery, 15 years on each count of aggravated assault, and 15 years each on the burglary and attempted armed robbery counts, all consecutive.

## ISSUES

Conde raises the following issues on appeal:

1. Whether the trial court erred in determining that he was competent to stand trial and to conduct his own defense;

2. Whether the trial court erred in ruling that an involuntary post-arrest statement could be used to impeach him; and

3. Whether the trial court erred in aggravating his sentences for elements of the crimes charged.

## DISCUSSION

*Competency Determination*

■ Conde first contends for a new trial because, in his view, he was incompetent to waive counsel and was incompetent in conducting his trial defense. He also questions his own competency at the time of sentencing and asserts that his case should be remanded for resentencing. His contentions are based on the post-trial diagnosis of Dr. Donald Tatro, a clinical psychologist appointed to assist him after the verdicts. Tatro concluded that Conde was incompetent because he suffered from a paranoid delusion shown in his trial theory that he was the victim of a police conspiracy.

Conde's claim that his alleged delusion rendered him incompetent to conduct his own defense evokes *State v. Fayle*, 134 Ariz. 565, 658 P.2d 218 (App.1982), where Fayle was charged with the assault of a doctor whom he believed had wrongly denied him treatment for an imagined tubercular condition. Conde contends that his similar defense rendered him incompetent to waive counsel. The *Fayle* court, however, rejected the claim:

There is no doubt from this record that defendant knew he had a right to counsel, the role of counsel and that he appreciated the consequences of waiving counsel. Thus, although the defendant's defense was a product of his delusion, and, although his compulsion to present the defense may also have been a product of his delusion, the record clearly reveals that the defendant was in control of his

---

1. The court stated:

There is no issue but what [Ariz.Rev.Stat. Ann.] 13–3898 was violated and Rule 4.1(A) of the rules of criminal procedure was violated. The Defendant was in fact held without criminal charges through the 14th of June, either 17 or 18 days, depending on how you look at it.

Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–3898(A) states:

A person arrested without a warrant shall without unnecessary delay be taken before the nearest or most accessible magistrate in the county in which the arrest occurs, and a complaint shall be made before the magistrate setting forth the facts, and the basis for his statement of the facts, showing the offense for which the person was arrested.

Rule 4.1(a), Arizona Rules of Criminal Procedure, states:

**Timeliness of Appearance Before Magistrate.** A person arrested shall be taken before a magistrate without unnecessary delay. If he is not brought before a magistrate within 24 hours after arrest, he shall immediately be released.

faculties with regard to understanding his constitutional rights, and that he was competent to make a knowing and intelligent waiver of his right to counsel.

*Id.* at 575, 658 P.2d at 228.

If Conde's defense was the product of a delusion—an assumption not accepted by the trial court—the validity of his waiver of counsel depends on the court's determination that he understood the constitutional rights he was waiving. Unlike Fayle, who had a pre-trial examination to determine his competency, Conde's competency under Ariz.R.Crim.P. Rule 11 was never at issue before trial. Although his counsel filed a motion to determine competency, citing without elaboration Conde's "bizarre behavior" and "total lack of understanding concerning his case," Dr. Michael Stumpf, the correctional psychiatrist who conducted a pre-screening examination, found no grounds to question his competency to assist in his own defense or to enter a guilty plea. The trial court found no reasonable grounds to appoint additional experts for further examination.

This decision was not an abuse of discretion. *See State v. Johnson,* 147 Ariz. 395, 398, 710 P.2d 1050, 1053 (1985). When Conde subsequently executed a valid waiver of counsel on two occasions, he was told of his right to the assistance of counsel, advised of his right to revoke his waiver and cautioned about the perils of self-representation. After executing the first waiver he was examined by another correctional psychiatrist, Dr. Leonardo Garcia–Bunuel, who specifically found him competent to represent himself provided he had access to advisory counsel.

Any doubt about Conde's competence to conduct his own defense is belied by his performance at trial, where he displayed precise understanding of the rules of procedure and evidence. He objected appropriately and was frequently sustained. His cross-examination addressed his theory of the case, emphasized prior inconsistent statements by witnesses, and even caused the state to rehabilitate witnesses on redirect examination. On occasions when prosecution witnesses offered no damaging testimony, he did not cross-examine at all. Prior to trial, he secured a ruling barring the use of his post-arrest statement in the state's case-in-chief because of the state's delay in giving him a prompt initial appearance. His trial skills were lawyer-like. These factors support the trial court's determination that no further proceedings to determine competency were required.

Contrary to Conde's characterization of Tatro's testimony as uncontroverted, Tatro's opinion was contradicted by the prior opinions of Drs. Stumpf and Garcia; by Conde's demeanor and performance at trial; and by the state's cross-examination of Tatro which revealed that Tatro was unaware of Conde's post-arrest inculpatory statement. Tatro even admitted Conde's defense might be a fabrication rather than the product of a delusion. The trial court was not compelled to accept Tatro's opinion. It did not abuse its discretion in concluding that no reasonable grounds existed to question Conde's competency at the time of sentencing. *See State v. Bishop,* 162 Ariz. 103, 107, 781 P.2d 581, 585 (1989). (In assessing competency, "The trial judge is not required to accept or reject expert testimony in toto and may rely on particular views of one or more experts even though he or she may disagree with the expert's ultimate conclusion.")

### Admissibility of Conde's Statement for Impeachment

Conde next contends that reversible error occurred when the trial court ruled that his statement to a Phoenix police detective was involuntary but could nonetheless be used to impeach him if he testified. The state responds (1) that he cannot raise the issue because he did not testify at trial and (2) that his statement was not involuntary because it was not the product of coercive police conduct.

For his part Conde contends that, notwithstanding the judge's findings, his second statement was indeed coerced because it was the product of the first hospital interrogation when he was in no condition to make a voluntary statement.

1. Did Conde preserve this claim for review?

 The state contends that this issue is not preserved for review because Conde did not testify. In *State v. Conner*, 163 Ariz. 97, 786 P.2d 948 (1990), our supreme court held that a defendant whose confession without Miranda warnings was ruled admissible for impeachment could not challenge that ruling because he did not testify. *Conner* relied on *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), which held that a defendant must testify as a prelude to challenging a ruling allowing prior convictions to be admitted for impeachment purposes. *Conner* stated that:

> Although the impeaching questions are permitted under *Harris* [*v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)] the trial court is still required to balance probative value against prejudice under Rule 403, Ariz.R.Evid., 17A A.R.S.; (Citations omitted).... In addition, requiring defendant to testify prevents defendant from "cynically manufacturing a basis for a possible appeal by falsely arguing that the threat of impeachment alone deterred him from testifying." Westen & Mandell, *To Talk, To Balk, or to Lie: The Emerging Fifth Amendment Doctrine of the "Preferred Response,"* 19 Am.Crim.L.Rev. 521, 552 (1982). Furthermore, this requirement ensures that the reviewing court is presented with an actual, rather than hypothetical injury. *Id.; see also People v. May*, 43 Cal.3d 436, 233 Cal.Rptr. 344, 729 P.2d 778 (Lucas, J., dissenting) ("in absence of such a rule a reviewing court would be unable to determine whether the error committed was prejudicial"), *vacated*, 44 Cal.3d 309, 243 Cal.Rptr. 369, 748 P.2d 307 (1988).

163 Ariz. at 102–103, 786 P.2d at 953–954. Permitting a defendant on appeal to challenge a pretrial evidentiary ruling presumes that the state has actually used the statement to impeach the defendant. A prosecutor could just as well forego its use, precisely as occurred here, and in that instance there is nothing to complain about on appeal.

The United States Supreme Court has never stated that a defendant may challenge impeaching statements when he does not testify at trial. The issue was approached in *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), where the defendant challenged the use of immunized grand jury testimony as impeachment evidence. The Supreme Court upheld the challenge despite the defendant's not testifying. Noting that the New Jersey appellate courts had addressed the issue on its merits, the Supreme Court stated that whether to permit such review was a matter that could be decided under state procedural rules. *Id.* at 456, n. 5, 99 S.Ct. at 1295, n. 5.

*Portash* stands for the proposition that a state court is permitted but not required to consider a trial court's impeachment ruling whether or not the defendant testifies. *Luce* further narrowed *Portash*. Unlike *Portash*, *Luce* reviewed an evidentiary ruling under Evidence Rule 609(a)(1), noting that reliance on *Portash* was misplaced because *Portash* "... did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under Rule 609(a)—is reviewable on appeal." Thus, the *Luce* court adopted the rule that a defendant must testify in order to preserve for review a non-constitutional claim of improper impeachment with a prior conviction.

A majority of the state courts addressing this evidentiary issue has adopted *Luce*. Some courts have declined to do so based on their own interpretations of their evidentiary rules. *See, e.g. State v. Lamb*, 84 N.C.App. 569, 353 S.E.2d 857 (1987) (United States Supreme Court's non-constitutional *Luce* decision cannot bind or restrict how North Carolina courts interpret and apply North Carolina evidence law); *Commw. v. Jackson*, 385 Pa.Super. 401, 561 A.2d 335 (1989) ( ... *Luce* is inconsistent with Pennsylvania law ... thus, appellant may challenge the trial court's impeachment ruling even though he did not testify at trial); *See also People v. Frey*, 168 Mich.App. 310, 424

N.W.2d 43 (1988); *People v. Moore,* 156 A.D.2d 394, 548 N.Y.S.2d 344 (1989).

While the issue in *Conner* was a constitutional one, Arizona adopted the *Luce* rule: Although a defendant's statements were obtained in violation of Miranda, his election to forego testifying obviates any challenge to the ruling on use of the impeachment evidence. Conde's claim that his second statement was the product of the allegedly coercive first interrogation involves the same analysis and result. All of the policy reasons for declining to consider his claim in the absence of his testimony apply whether the statement was coerced or, as in *Conner,* obtained in violation of Miranda. In either situation, Conde's alleged prejudice is hypothetical because his testimony could not be impeached because it did not occur.

We recognize that this holding is an incremental extension of *Conner* on an issue that apparently was not before our supreme court in that case. Because of this extension, we address the merits of Conde's claim.

2. Was defendant's statement admissible for impeachment?

Conde contends that his second statement to Saldate was the product of the first interrogation. Because he was physically unable to give a truly voluntary confession on the earlier date, he argues that the second statement should have been excluded even for impeachment purposes under *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1979). In response, the state points out that the trial court did not find the later statement coerced but found the later statement involuntary only in a technical sense because it was obtained while Conde was in custody prior to his delayed initial appearance. The

state asserts that since the statement was not coerced, it need not have been excluded for impeachment if he took the stand.

■ The term "involuntary" refers to Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–3988 (1989),[2] a standard broader than that required to determine voluntariness as a matter of due process. The statute expressly requires the trial court to consider factors other than police coercion, including two cited by the trial judge here: the length of time between the suspect's arrest and his statement and the absence of an attorney at the time the statement was given.

■ The trial court properly concluded that Conde's second statement was not coerced. Since *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), voluntariness is determined by an objective evaluation of police conduct to determine any coercion. Our supreme court has recognized that the inquiry has a subjective element as well. In *State v. Carrillo,* 156 Ariz. 125, 750 P.2d 883 (1988), the court stated:

... while *Connelly* directs us to an objective evaluation of police conduct, we believe that evaluation must be made in light of what the police should perceive from the objective manifestations of the subject's physical or mental condition.

*Id.* 156 Ariz. at 137, 750 P.2d at 895.

■ Voluntariness depends on the totality of the circumstances. *Id.* at 135, 750 P.2d at 893. Even if the statement in the first interrogation was involuntary in the constitutional sense, that fact did not automatically taint the second statement. "[I]f the taint of the illegal conduct was sufficiently attenuated, that statement may be admitted as an otherwise voluntary confession, considering the time since the original

**2.** In pertinent part, the statute provides:

A. In any criminal prosecution brought by the state, a confession shall be admissible in evidence if it is voluntarily given.
B. The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including but not limited to the following:

1. The time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment.
5. Whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the factors indicated ... need not be conclusive on the issue of voluntariness of the confession.

statement and the presence of intervening circumstances." *Arizona v. Fulminante,* 499 U.S. 279, ——, 111 S.Ct. 1246, 1266, 113 L.Ed.2d 302 (1991), *reh'g denied,* —— U.S. ——, 111 S.Ct. 2067, 114 L.Ed.2d 472 (1991).

Eight days elapsed between the two hospital interrogations. During that time, Conde was removed from intensive care and was well enough to be transferred to a different hospital. At the time of the second interrogation he was able to walk around the detention ward. His pain medication was limited to Tylenol, which did not interfere with his ability to understand questions. Prior to the second interrogation he had not taken any medication. Nothing said in the first interrogation was used to obtain the second statement. The first interrogation simply had no impact on the second. The trial judge did not err in concluding that the state proved the voluntariness of his admission by a preponderance of the evidence.

■ Although the second statement was involuntary under A.R.S. § 13–3988, it was properly admissible for impeachment.[3] In *State v. Routhier,* 137 Ariz. 90, 669 P.2d 68 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984), the court held that a defendant could be impeached by statements made while hospitalized following his arrest, even though he had previously requested but had not been given access to counsel.

In *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the United States Supreme Court held a statement obtained under similar circumstances admissible for impeachment provided that "the trustworthiness of the evidence satisfies legal standards." *Id.* at 721, 95 S.Ct. at 1220. More recently, the Supreme Court has reaffirmed *Hass* by holding that an otherwise voluntary statement obtained pursuant to an invalid waiver of the right to counsel could be used for impeachment at trial. *Michigan v. Harvey,* 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990).

The instant case matches *Routhier* and *Harvey.* There was no impediment to allowing the second statement to be used for impeachment which, as noted above, never occurred.

## Imposition of Aggravated Sentences

■ Conde next complains that the trial court improperly imposed maximum sentences based on statutory aggravating factors that were elements of the charged offenses. He contends that "expectation of the receipt of anything of pecuniary value" under A.R.S. § 13–702(D)(6) is an element of the offenses of armed robbery and first-degree burglary. Similarly, he claims that use of a deadly weapon and threatened infliction of serious physical injury, which are statutory aggravating factors under A.R.S. § 13–702(D)(1) and (2), are also elements of burglary and aggravated assault. He contends that, under *State v. Lara,* 170 Ariz. 203, 823 P.2d 70 (Ct.App., 1990), use of an essential element of the offense to aggravate sentence is improper.

*Lara* has been reversed by our supreme court, *State v. Lara,* 171 Ariz. 282, 830 P.2d 803 (1992), which we must follow regardless of our own analysis. In light of that controlling opinion, the trial court properly considered the challenged aggravating factors in imposing sentence notwithstanding that those factors are also elements of the charged offenses.

## CONCLUSION

For the reasons stated, we conclude that Conde was competent to waive assistance of counsel and was competent during his trial and sentencing. We conclude that the issue regarding impeachment by a prior coerced statement is meritless because Conde did not testify. We find no error in the admissibility of his involuntary statement for impeachment and no error in ag-

---

**3.** Whether suppression of the statement from use in the state's case-in-chief was proper is not at issue on this appeal.

gravating his sentence. His convictions and sentences are affirmed.

CONTRERAS, P.J., and GRANT, J., concur.