938 P.2d 53

**Carmen FERREIRA, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF COCONINO, The Honorable H. Jeffrey Coker, a judge thereof, Respondent Judge,**

**The STATE of Arizona, Real Party in Interest.**

**No. 1 CA–SA 95–0241.**

Court of Appeals of Arizona, Division 1, Department B.

April 30, 1996.

Bryon Middlebrook, P.C. by Bryon Middlebrook, Flagstaff, for Petitioner.

Terence C. Hance, Coconino County Attorney by Richard S. Vihel, Deputy County Attorney, Flagstaff, for Respondent.

## OPINION

THOMPSON, Presiding Judge.

Petitioner Carmen Ferreira (Ferreira) seeks special action review of a superior court order denying her motion to dismiss a criminal action against her based on double jeopardy grounds. The issue presented is whether a criminal prosecution following an administrative forfeiture of unclaimed property offends the double jeopardy clause. We hold that it does not and, in accordance with our previous order accepting jurisdiction and denying relief, issue the following opinion.

## FACTS AND PROCEDURAL HISTORY

Between July 24, 1992, and August 4, 1992, Ferreira and two co-defendants allegedly negotiated with undercover police officers from the Northern Arizona Metro Unit to purchase fifty kilograms of drugs. The defendants gave $44,000.00 to the officers in partial payment for the cocaine. The officers were to later provide the cocaine to Ferreira and her co-defendants in exchange for the balance owed on the drug purchase. Prior to completing the transaction, the officers arrested Ferreira and the other defendants.

On September 3, 1992, the state filed a notice of pending forfeiture stating that the $44,000.00 allegedly given to the law enforcement officers by the defendants was subject to forfeiture. Pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 13–4309, the attorney for the state made uncontested civil forfeiture "available" to the defendants. This statutory procedure provided that the property would be forfeited if none of the defendants filed a claim with the court, or a petition with the attorney for the state, within thirty days after receipt of notice. Each defendant received notice of the pending forfeiture action by publication or, as in Ferreira's case, by certified mail.

None of the defendants filed a timely petition or claim contesting the pending forfeiture. The state subsequently applied for an order of forfeiture. The state's application included an affidavit from one of the officers involved in the reverse sting operation, which set forth facts showing probable cause to believe that the $44,000.00 had been the proceeds of an illegal drug transaction and, therefore, subject to forfeiture. The trial court thereafter awarded the $44,000.00 to the state.

On September 10, 1992, a Coconino County grand jury indicted Ferreira and her co-defendants for conspiracy to possess narcotic drugs for sale, attempted possession of narcotic drugs for sale and conducting an illegal enterprise. Ferreira filed a motion to dismiss these charges, claiming that the double jeopardy clauses of the United States and Arizona Constitutions barred a criminal prosecution following a civil forfeiture proceeding. The trial court denied Ferreira's motion to dismiss. This special action followed.

## DISCUSSION

■ The Arizona special action procedure is particularly suited to the constitutionally mandated right to appellate review of claims of double jeopardy. *Nalbandian v. Superior Court,* 163 Ariz. 126, 130, 786 P.2d 977, 981 (App.1989), *cert. denied,* 498 U.S. 997, 111 S.Ct. 554, 112 L.Ed.2d 562 (1990). Special action is an appropriate procedural vehicle when a criminal defendant raises an issue prior to prosecution about whether that prosecution will violate her constitutional

right to double jeopardy protection. *Fitzgerald v. Superior Court,* 173 Ariz. 539, 543, 845 P.2d 465, 469 (App.1992). Therefore, we have accepted special action jurisdiction.

Ferreira argues that her criminal prosecution will place her twice in jeopardy for the same offense. The double jeopardy clause provides that no person shall be "twice put in jeopardy of life or limb" for the same violation of the law. U.S. Const. amend. V. This constitutional provision has been interpreted to protect against: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *Fitzgerald,* 173 Ariz. at 544, 845 P.2d at 470. The double jeopardy clause is enforceable against the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *Taylor v. Sherrill,* 169 Ariz. 335, 338, 819 P.2d 921, 924 (1991).

In the present case, Ferreira argues that she may not be criminally prosecuted for charges arising from the same conduct involved in the prior forfeiture of the $44,-000.00. She contends that such a prosecution would violate the constitutional prohibition against imposing multiple punishments for the same offense. In deciding whether the state's actions violate the double jeopardy clause, we must consider two questions: (1) whether the civil forfeiture action and the subsequent criminal prosecution constitute "separate proceedings;" and (2) whether an uncontested civil forfeiture constitutes "punishment" under Arizona's statutes.[1]  *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216 (9th Cir.1994).

This court recently addressed the first issue in *State v. Leyva,* 184 Ariz. 439, 909 P.2d 506 (App.1995). In that case, we held that a civil forfeiture action and a criminal prosecution are "separate proceedings" when they involve the same conduct but are instituted at different times, presided over by different judges, tried before different fact finders and resolved by separate judgments. *Id.* at 441, 909 P.2d at 508. In reaching this conclusion, we relied on earlier Ninth Circuit case law. *See $405,089.23,* 33 F.3d at 1216; *but see United States v. 18755 N. Bay Rd.,* 13 F.3d 1493, 1499 (11th Cir.1994); *United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993), *cert. denied, Bottone v. United States,* 510 U.S. 1092, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). Here, the record shows that the civil forfeiture action and the subsequent criminal prosecution are clearly separate proceedings under the *Leyva* standard.

*Leyva* is also instructive in determining whether the uncontested civil forfeiture of the $44,000.00 is considered "punishment." In *Leyva,* the state filed a motion for summary judgment, seeking a twenty million dollar *in personam* civil forfeiture, after the defendant, Francisco Leyva, pled guilty to involvement in a drug smuggling operation. *Leyva* at 441, 909 P.2d at 508. Leyva argued that any subsequent civil judgment against him would violate the double jeopardy clause. *Id.* at 441, 909 P.2d at 508. In deciding whether the civil forfeiture was punishment or merely remedial, the court noted:

> Whether a civil sanction constitutes punishment is determined "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." [*Halper*] at 447 [109 S.Ct. at 1901]. "In making this assessment, the labels 'criminal' and 'civil' are not of paramount importance." *Id.* Rather, a sanction is punitive when, as applied in the individual case, it serves the goals of punishment. *Id.* at 448 [109 S.Ct. at 1901–02]. Legislative declaration regarding the nature of the sanction is not of paramount importance.

*Leyva* at 443, 909 P.2d at 510. The court in *Leyva* concluded that the forfeiture judgment in that case violated the double jeopardy clause because it constituted, at least in part, a second punishment. *Id.* at 445, 909 P.2d at 512.

Unlike *Leyva,* the civil forfeiture in this case preceded the criminal prosecution and no attempts were made by Ferreira to claim

---

1.  *See* A.R.S. § 13–4301 *et seq.* (1992).

the property at issue, either prior to or after forfeiture.[2] Moreover, the forfeiture here involved a discrete, fixed fund which all potential owners were given an opportunity to claim and which was held in police custody at the time the forfeiture proceeding commenced. Conversely, the money judgment obtained by the state in *Leyva* was recompense for the estimated value of a marijuana field seized from a drug-smuggling organization of which Leyva was a member, for expenses of investigating and prosecuting the drug ring, and for other sums which the state did not possess at the time of the forfeiture but hoped to recover. *Id.* at 441, 909 P.2d at 508. The twenty million dollars represented damages to the state and ill-gotten gain realized by the criminal enterprise which the state sought to recover not from the criminal enterprise but from Leyva and his wife personally. *Id.* Most critically, the civil judgment in *Leyva* was *in personam*, thereby requiring the specific identification of a wrongdoer from whom the sums sought would be recovered. The $44,000.00 at issue here had been the subject of an *in rem* forfeiture; Ferreira never claimed the property and no specific owner needed to be identified to properly execute the forfeiture. This case is therefore distinguishable from *Leyva* on this issue.

▪ Indeed, we are presented here with a different, but related issue: whether the administrative forfeiture of *unclaimed* property constitutes "punishment." We conclude that it does not. In a companion case to *$405,-089.23*, the Ninth Circuit squarely confronted this exact issue. In *United States v. Cretacci*, 62 F.3d 307 (9th Cir.1995), the Ninth Circuit concluded that "an owner who receives notice of the intended forfeiture and fails to claim an ownership interest in the property has effectively abandoned it." *Id.* at 310. The court characterized administrative forfeiture proceedings directed at such unclaimed property as "simply constitut[ing] the taking of abandoned property." *Id.* For this reason, the court ·found that such a taking would not impose punishment for dou-

ble jeopardy purposes. *Id.* We find the Ninth Circuit's reasoning persuasive.

▪ The administrative forfeiture procedures in *Cretacci* are analogous to those in the present case. Under both Arizona and federal procedures, the agency that seized the property must notify potential owners of its intention to forfeit the seized property and, if the property is not claimed within a specified amount of time, the agency may declare it forfeited and sell it. 19 U.S.C. § 1609(a); A.R.S. §§ 13–4309 and 13–4315. Here, Ferreira was notified of the pending forfeiture and did not respond. As a nonparty to the forfeiture proceeding, Ferreira could neither be placed in jeopardy nor "punished" in the constitutional sense. Because there is no risk of a determination of guilt in an uncontested administrative forfeiture proceeding, jeopardy does not attach. A later criminal prosecution therefore could not constitute double jeopardy. *See, e.g., United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.1994), *cert. denied*, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994); *United States v. Walsh*, 873 F.Supp. 334, 336–37 (D.Ariz.1994); *United States v. Kemmish*, 869 F.Supp. 803, 806 (S.D.Cal.1994).

The double jeopardy clause "guards against Government oppression, [but] does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott*, 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978). Indeed, as a California district court correctly recognized:

A person may elect not to file a claim to property for any of a number of reasons. But, in doing so, the person forgoes the opportunity to contest the seizure on any ground or to contest any issue of personal culpability—be it personal guilt, innocence, or negligence. A person who avoids an adjudication of his or her guilt or innocence cannot later claim double jeopardy when the government seeks to obtain such an adjudication in a later proceeding. The Supreme Court has held that where a per-

---

**2.** Although the defendants in *Leyva* did not initially oppose the state's summary judgment motion, they later sought to have the judgment set aside after discovering their misapprehension

that "the matter had been settled." *Id.* at 441, 909 P.2d at 508. Ferreira has never actively opposed the forfeiture of the $44,000.00.

son "successfully avoid[s] such a[n] adjudication . . . [of] guilt or innocence," he has been "neither acquitted nor convicted" for purposes of double jeopardy.

*Kemmish,* 869 F.Supp. at 805 (quoting *Scott* at 99, 98 S.Ct. at 2198.) Upon receiving notice of the impending forfeiture, Ferreira had the option of contesting the forfeiture or allowing the property to be forfeited as unclaimed. Ferreira chose not to make a claim. Consequently, the $44,000.00 could be forfeited based solely upon the state's belief that the money had been involved in a crime. A.R.S. §§ 13–4305(B), 13–4308(A), 13–4309. The forfeiture of property without any opposition does not place anyone in jeopardy. Thus, as a result of Ferreira's voluntary choice not to file a claim, no adjudication of her personal culpability occurred.

■ Ferreira argues that she did not voluntarily decline to claim the $44,000.00 in the civil forfeiture proceeding, but rather that she invoked her Fifth Amendment right not to incriminate herself. She asserts that if she had admitted at the forfeiture proceeding that the money belonged to her, this admission could have been used against her as impeachment evidence in the subsequent criminal action. She claims that her option whether or not to make a claim was constrained by her being forced to choose between surrendering her property rights or her freedom from self-incrimination.

There is no evidence in the record that Ferreira invoked her Fifth Amendment rights, or that self-incrimination concerns played any part in her failure to make a claim. Without such evidence, we decline to speculate as to why Ferreira did not make a claim and will not credit a *post hoc* assertion that the threat of impeachment deterred her from making a claim because such assertions are easily manufactured. *See State v. Conde,* 174 Ariz. 30, 34, 846 P.2d 843, 847 (App.1992) (claim that defendant declined to testify at trial because of threat of improper impeachment not considered).

Lastly, Ferreira maintains that at least one federal district court has held that a person is entitled to double jeopardy protection in a subsequent prosecution even though a prior civil forfeiture proceeding was uncontested, citing *United States v. McCaslin,* 863 F.Supp. 1299 (W.D.Wash.1994). Her reliance on this case is misplaced. As the state correctly points out, the forfeiture action in *McCaslin* was resolved by a consent judgment; it was not truly uncontested. *Id.* at 1305 n. 1. This case is therefore not analogous. *See United States v. Ursery,* 59 F.3d 568, 571–72 (6th Cir.1995) (a forfeiture action resolved by consent decree is an adjudication on the merits and is distinguishable from an uncontested forfeiture).

## CONCLUSION

The state's uncontested forfeiture of the $44,000.00 imposed no "punishment" upon Ferreira and therefore did not place her in jeopardy. Accordingly, we hold that her subsequent criminal prosecution does not violate the double jeopardy clause.

EHRLICH, J., concurs.

KLEINSCHMIDT, Judge, concurring specially.

I concur with the result the majority reaches under the particular facts of this case. I see a fiction—arguably one that goes too far—in a case like *United States v. Cretacci,* 62 F.3d 307 (9th Cir.1995) which held that property known to belong to the defendant was abandoned because the defendant did not file a claim in the forfeiture proceeding. I see a similar fiction in a case like *United States v. Baird,* 63 F.3d 1213 (3d Cir.1995), which held that currency found in the defendant's house could be forfeited without implicating the double jeopardy clause because there was no finding that the property belonged to the defendant. But this is not a case in which a motor vehicle known to belong to the Defendant, or money found in her house were forfeited. Here, there is truly no way of knowing whether the Defendant had any interest in the money that was forfeited. For all we know, she was simply a go-between in the drug transaction. If she had no interest in the money, its forfeiture did not punish her in the slightest. *See id.* at 1217–19. Under these circumstances, I do not believe the guarantee against double

jeopardy protects the Defendant from prosecution.