NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL BARRETT, *Appellant.*

No. 1 CA-CR 19-0330

FILED 6-16-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201701595
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

¶1 Michael Barrett appeals his convictions and sentences for ten counts of sexual exploitation of a minor. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 We view these facts in a light most favorable to sustaining the verdicts and resolve all reasonable inferences against Barrett. *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). On October 18, 2017, law enforcement executed a search warrant at Barrett's home to investigate reports that he had inappropriately touched several minors. When detectives searched Barrett's cell phone, they found forty-seven explicit images of minors under the age of fifteen engaging in sexual conduct or exhibition.

¶3 The State charged Barrett with ten counts of sexual exploitation of a minor, class two felonies and dangerous crimes against children. After a two-day trial, a jury convicted Barrett as charged. The trial court sentenced Barrett to ten consecutive, slightly mitigated terms of 13.5 years in prison, resulting in an aggregate sentence of 135 years. We have jurisdiction over Barrett's timely appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1), and (A)(4).

## DISCUSSION

### I.     Barrett's Motions to Suppress

¶4 Barrett argues that the trial court erred by denying two motions to suppress: the first addressing incriminating statements Barrett made to detectives when he was in jail; and the second concerning statements Barrett made to his wife, L.B., in a patrol car on the day of his arrest. We review the trial court's denial of a motion to suppress evidence for abuse of discretion. *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016). We defer to the trial court's factual findings but review the court's legal and constitutional conclusions de novo. *See State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004). We consider only the evidence presented at the suppression

hearing and view the facts in a light most favorable to sustaining the trial court's ruling. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016).

**¶5** Police must stop asking questions when a suspect invokes his right to remain silent during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). "The exclusionary rule requires the suppression at trial of evidence gained directly or indirectly as a result of a government violation of the Fourth, Fifth or Sixth Amendments." *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997) (citation omitted).

**¶6** "The necessity of giving *Miranda* warnings to a suspect relates not to the voluntariness of a confession but to its admissibility." *State v. Morse*, 127 Ariz. 25, 29 (1980). "Voluntariness and *Miranda* are two separate inquiries." *In re Jorge D.*, 202 Ariz. 277, 281, ¶ 19 (App. 2002) (quotation marks omitted). "Preclusion of evidence obtained in violation of *Miranda* is based on the Fifth Amendment privilege against self-incrimination." *Id*. (citations omitted). "Preclusion of involuntary confessions is based on the Due Process Clause of the Fourteenth Amendment and applies to confessions that are the product of coercion or other methods offensive to due process." *Id*. (citations omitted); *see also State v. Ellison*, 213 Ariz. 116, 127, ¶ 30 (2006) ("To be admissible, a [defendant's] statement must be voluntary, not obtained by coercion or improper inducement."). A confession is "prima facie involuntary and the state must show by a preponderance of the evidence that the confession was freely and voluntarily made." *State v. Montes*, 136 Ariz. 491, 496 (1983). When evaluating voluntariness, "the trial court must look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant has been overborne." *State v. Lopez,* 174 Ariz. 131, 137 (1992). "A trial court's finding of voluntariness will be sustained absent clear and manifest error." *State v. Poyson*, 198 Ariz. 70, 75, ¶ 10 (2000).

## A.  Statements to Law Enforcement

**¶7** Before trial, Barrett moved to suppress statements he made to law enforcement. He argued that the detectives ignored his post-*Miranda* invocation of the right to remain silent and, further, that the statements were involuntary because the detectives obtained them by making impermissible promises.

**¶8** Detectives first interviewed Barrett at his residence on the day of his arrest and again two days later, after Barrett was incarcerated. At the evidentiary hearing held on the motion, the parties referred to the three interviews at Barrett's home as "Scenes One, Two, and Three." The parties

referred to the two jail interviews as "Jail One" and "Jail Two." For clarity, the trial court adopted these terms in its ruling.

¶9 A defendant's right to terminate a custodial interrogation must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 105 (1975) (quoting *Miranda*, 384 U.S. at 479). But invocation of *Miranda* does not "create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject . . . ." *Id*. at 102-03. Furthermore, when a statement made in an earlier interrogation is found to be involuntary, voluntary statements made in a later interrogation may be admitted so long as the subsequent statements are "sufficiently attenuated" from the prior interrogation. *State v. Conde*, 174 Ariz. 30, 35-36 (App. 1992) (citation omitted). "To determine whether coercive pressures have been dispelled we undertake an independent examination to see if there was a break in the stream of events sufficient to insulate the confession from the effect of everything that preceded it." *State v. Strayhand*, 184 Ariz. 571, 581 (App. 1995) (citation omitted). Factors to consider include "how much time elapsed . . . , whether there was any change in the place of interrogation, and whether there was a change in the identity of the interrogators." *Id*. (citation omitted).

¶10 After serving the search warrant, law enforcement took Barrett into custody, placed him in a patrol car, and read him the *Miranda* advisement. Barrett answered the detective's questions during Scene One but made no inculpatory statements. Shortly after Scene One, another detective returned to speak with Barrett. The detective told Barrett that they wanted to help him with "therapy" and a "psychiatrist," not put him in jail. Barrett clearly invoked his right to remain silent during Scene Two. Despite that invocation, detectives kept questioning Barrett in Scenes Two and Three. During that questioning Barrett made incriminating admissions about viewing the images.

¶11 Two days later, detectives contacted Barrett at the jail to interview him about new allegations of child molestation that law enforcement learned of after his arrest. After reading Barrett the *Miranda* advisement, Barrett agreed to answer the detectives' questions and did not invoke his right to remain silent. During the Jail One interview, Barrett made a few brief, general statements in which he indicated that he had looked at images of child pornography on the internet. Barrett began to cry as the detectives departed and he told them, "[t]here's more, I want to talk to you." A long Jail Two interview followed in which Barrett confessed to many child molestation allegations. Barrett also made a few isolated admissions that he looked at images of child pornography.

¶12 After a two-day evidentiary hearing, the trial court found a *Miranda* violation "as to Scene Two, seven (7) minutes and twenty-two (22) seconds and . . . as to Scene Three" and suppressed the statements from those interviews. The court further found that the statements in Scenes Two and Three were involuntary because the detectives made direct and implied promises to help Barrett and that he would not go to jail if he answered honestly. These rulings are not contested on appeal.

¶13 The court, however, denied Barrett's motion for Scene One, Jail One, and Jail Two. Regarding Jail One, the court found "the taint no longer exist[ed]" because the interview took place "two days later" about a "completely different case or allegation." Regarding Jail Two, the court recognized that Barrett freely initiated the interview and found "no voluntariness issues as to Jail [Two] at all." The court emphasized that it heavily weighed "actually listen[ing] to the recordings, because reading [the transcripts] just doesn't do a lot of things justice" and the recordings capture voice inflection, tone, and context. The State did not admit any evidence related to Scenes One, Two, or Three at trial but admitted redacted parts of the Jail One and Jail Two audio recordings. Barrett argues that the trial court erred because the Jail One and Jail Two interviews were impermissibly tainted by the violations during Scene One and Scene Two.

¶14 We discern no error. The passing of two days, the lack of contact from the detectives, and the different location sufficiently broke the stream of events to negate any taint from the earlier violations. *See Oregon v. Elstad*, 470 U.S. 298, 300-03, 317-18 (1985) (holding that the failure to give *Miranda* warnings before an interrogation that resulted in an admission did not taint a subsequent confession that followed a proper *Miranda* advisement approximately one hour later). Moreover, Barrett had been arrested, charged, and incarcerated for the sexual exploitation offenses after the earlier interviews. His arrest and incarceration are significant intervening circumstances. *Conde*, 174 Ariz. at 35-36.

¶15 The detectives permissibly contacted Barrett to ask about new allegations based on information they learned after Barrett's arrest. *See Mosley*, 423 U.S. at 104-07 (holding that police did not violate *Miranda* in a second interrogation for different charges when they provided the *Miranda* advisement "more than two hours" after the suspect had invoked the right to remain silent during the first investigation). Despite the violations during the initial interviews, the new allegations of child molestation were an important intervening purpose for contacting Barrett in jail and dispelled the coercive pressure of the prior violations on these facts. *Cf. State v. Morgan*, 149 Ariz. 112, 114 (App. 1986) ("The courts have held [that

whether a second interview is on the same subject is not] of critical significance, reasoning that the focus of the court's inquiry [under *Mosley*] must be whether the object of the second interrogation is to wear down the defendant's resistance to interrogation."). Moreover, detectives ended the Jail One interview because it was "fruitless" and Barrett initiated the Jail Two interview. Both facts support the conclusion that Barrett's resistance to questioning was not overborne by the jail interviews. *Id.*

**¶16** Therefore, like the trial court, we are persuaded that the change in conditions adequately removed any coercive effect and "insulated [Barrett's admissions] from the effect of everything that preceded it." *Strayhand*, 184 Ariz. at 581. Finally, after "listen[ing] to the [audio recordings of the] conversation in its entirety" the trial court was convinced that Barrett spoke voluntarily. We must defer to the court's factual findings and credibility determinations and nothing in the record overcomes that deference. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118 (1996).

## B. Conversation with L.B.

**¶17** Barrett further moved to suppress the incriminating statements he made to L.B. After speaking with detectives at his residence, Barrett said that he "wanted to talk to his wife." She wanted to speak to him as well. The detectives let them talk through a rolled-down window while Barrett sat inside a patrol car. Barrett told L.B. that he had been looking at "stuff" on the internet for about two years, but had touched no children and wanted help. A detective was standing near the patrol car and recorded their conversation. In his motion, Barrett argued that his statements were "elicited based on the functional equivalent of interrogation and thus are subject to *Miranda* and Fifth Amendment voluntariness."

**¶18** The trial court found that Barrett "initiat[ed] the request" and "it was clearly [Barrett] who requested to talk to his spouse." Further, the trial court found no evidence that this "was some sort of a ruse" by law enforcement to obtain a confession. The State played part of the recording at trial.

**¶19** "[T]he *Miranda* [procedural] safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*

¶20            "A due process claim must be based on 'state action.'" *In re Timothy C.*, 194 Ariz. 159, 162, ¶ 14 (App. 1998).  "Whether a private person acted as a state agent is a 'fact-intensive inquiry that is guided by common law agency principles.'" *State v. Yonkman*, 233 Ariz. 369, 372-73, ¶ 8 (App. 2013) (quoting *State v. Martinez*, 221 Ariz. 383, 387, ¶ 14 (App. 2009)).  "The numerous factors to consider when determining agency include a person's purpose or motive in acting and whether law enforcement provided any reward." *Id.*

¶21            On this record, we find no error.  Barrett adduced no evidence that the detectives arranged the conversation, questioned Barrett, or persuaded L.B. to obtain evidence.  *See Arizona v. Mauro*, 481 U.S. 520, 526-30 (1987) (finding no interrogation or functional equivalent under *Miranda* or *Innis* when officers permitted defendant to speak with his wife in their presence and recorded the conversation but did not ask questions about the crime and did not arrange for the wife to elicit incriminating statements); *see also Innis*, 446 U.S. 291.  To the contrary, Barrett initiated the request and spoke freely with L.B.   Barrett argues that his conversation was "confidential," but does not dispute that the detective was standing next to the patrol car and the car's window was down during the conversation.  *See Mauro*, 481 U.S. at 526-30.  Moreover, the record confirms that the couple knew of the detective's presence; during the conversation, L.B. asked the detective if Barrett was going to jail and for permission to use the phone. Because the detectives did not orchestrate the conversation and L.B. was not their agent, state action is absent and no constitutional violation occurred. *Yonkman*, 233 Ariz. at 372-73, ¶¶ 7-9.

## II.      Mitigating Circumstances

¶22            Barrett also contends that the trial court abused its discretion by rejecting several mitigating factors he presented at sentencing. Generally, "[w]e will not disturb a sentence that is within the statutory range absent an abuse of the trial court's discretion." *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007).  Because Barrett failed to object to the trial court's findings, we review his claim for fundamental, prejudicial error only. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

¶23            At sentencing, Barrett argued that the trial court should consider several mitigating factors: the offenses did not involve physical contact with the minors; his candor to police; he was a "good provider" for his family and his crimes did not harm his family directly; and his mental health issues.  The State requested presumptive sentences and did not prove any aggravating factors to the jury.

¶24 The trial court found only Barrett's lack of prior felony convictions as a mitigating circumstance. Responding to Barrett's mitigation arguments, the court first found that Barrett's criminal conduct and imminent prison sentence rebutted his claims that he was a "good provider" and had not harmed his family. Furthermore, the court found that Barrett was not forthright with police, as his admissions only occurred after he was confronted by law enforcement. As to the last alleged mitigating factor, Barrett eventually conceded that he could not establish a causal connection between his crimes and his mental health issues. *See State v. Jones*, 185 Ariz. 471, 492 (1996) (noting that mental illness may serve as a mitigating factor only when that illness is causally connected to the crime committed).

¶25 The trial court acted fully within its wide discretion by imposing slightly mitigated terms. *See State v. Harvey*, 193 Ariz. 472, 477, ¶ 25 (App. 1998) (holding that when the trial court considers aggravating and mitigating factors, the weighing of those factors is a matter within its sound discretion). Barrett complains that the trial court failed to explain why it did not find the lack of criminal contact as a mitigating circumstance, but the court need not express its findings. *See State v. Harrison*, 195 Ariz. 1, 4, ¶ 12 (1999) (stating that the trial court need not recite a "specific litany" or make "formal findings or conclusions" at sentencing). And, in any case, the court implicitly rejected Barrett's argument by finding that his conduct victimized and "sexually exploited" the minors "[e]ach time" he looked at an image. Furthermore, we find the trial court acted within its discretion when it found the absence of additional crimes did not compel mitigation.

### III. Cruel and Unusual Punishment

¶26 Barrett claims that his 135-year aggregate sentence is grossly disproportionate to the crimes he committed and violates the Eighth Amendment's prohibition against cruel and unusual punishment. Because Barrett did not raise this argument to the trial court, we review for fundamental, prejudicial error only. *See Escalante*, 245 Ariz. at 140, ¶ 12.

¶27 Barrett was convicted of dangerous crimes against children. Accordingly, the court sentenced Barrett pursuant to A.R.S. § 13-705, which authorizes the sentences for such crimes. Each sentence fell within the statutory range. A.R.S. § 13-705(D); *see Joyner*, 215 Ariz. at 137, ¶ 5. Under A.R.S. § 13-705(M), consecutive sentences are mandatory for convictions of specified felonies, including sexual exploitation of a minor. *See* A.R.S. § 13-705(Q). Our supreme court has concluded that this sentencing scheme does not violate the constitutional prohibition against cruel and unusual

punishment. *See State v. Berger*, 212 Ariz. 473, 478-83, ¶¶ 23, 28, 36, 49, 51 (2006) (upholding an aggregate sentence of 200 years arising from the imposition of 20 consecutive terms of 10 years' imprisonment for sexual exploitation of a minor convictions). We have no authority to disregard a decision of our supreme court. *See State v. Long*, 207 Ariz. 140, 145, ¶ 23 (App. 2004) ("This court is bound by decisions of the Arizona Supreme Court and has no authority to overturn or refuse to follow its decisions."). We find no error.

**CONCLUSION**

¶28        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA